Turn to 23-1047 U.S. v. Curry Howard Pincus, Federal Public Defender There is insufficient evidence that Mr. Curry possessed a gun and his felony possession conviction must therefore be vacated. There is proximity, but there is not the necessary requirement of a joint occupancy case. There is nothing that connects him to the backpack or the gun within it. There is stuff that connects him to the space, but that is not what we require in a joint occupancy case. And this is a joint occupancy case because this is shared space. And that requires the government to... Well, because his mother wasn't in the car. No. You're saying that it's joint occupancy because the mother owned the car, was a co-owner of the car. The co-owner of the car, yes. And the normal presumption from that is that people who own things use those things. If they jointly owned it, there's a presumption to use it. Can I just stop? Certainly. So are you relying on a presumption? Well, we're trying... But I'm wondering if there's any actual evidence that she ever used the car. There is not evidence she actually used the car. None, zero. There's nothing in the record that she ever used the car. No. There's evidence that they both owned it and that he was driving it. There's no evidence that he used the car before that. There's no evidence on that point at all. The normal import of owning something... I'm sorry? You didn't say it was his car. I mean, you could draw an inference from that, couldn't you, that he'd used it before? Well, you certainly could draw an inference that he used it. It's not enough to overcome the legal status of it as jointly owned. It doesn't show that only that it was his car in that sense. Maybe it can get you to he thought he... Well, first of all, when somebody refers to it as my car, that's a shorthand way of referring to things that is pretty common, even if you share it with somebody else, and even if you're speaking to that other person, and later in that conversation he said the car. In any event, it doesn't overcome the legal status of the car, and at best it might be taking some evidence of his more predominant use. But all that matters here is that there is... The ordinary course would be that she, his mother, used the car as well, and the government would have to show that that's not the case to overcome that. They didn't present anything about prior use by anybody. This is such a legal argument, and I always thought these issues were common sense, the sort of fact-finding jurors make, and when we talk about joint possession cases, we have two people sharing a room, and they search and they find something in the room, and who's it linked to, and maybe if that person's ID is in there or letters to that person, then we draw that inference. But it's all based essentially on common sense, not some legal construct, isn't it? Well, usually there's not much doubt that there is joint occupancy. Two people are in the car together, people are sharing a home, typically there's clear evidence that there's joint occupancy or shared space. But if you look at the house example, if Mr. Curry and his mother both jointly owned a home, we would assume she was living there as well. And it's for the government in this case to show that something takes this case out of the joint occupancy context. And that is that he's the only one in the car at the time, and it's right next to him. Why isn't that something someone can draw an inference from? Well, being in the car at the time does not mean that you're the only one who uses the car. Look at Samora and many other cases of this court. Where somebody has borrowed a car, this court recently did it in Samuels, I believe, in the rental car context. The point is that there was somebody else who naturally would be taken to use the car and who could have left something in there. Right. And a jury could say, how likely is it that the mother has a backpack with a gun that she puts in this car? And think that's just not the way things work. That's a different question about the nexus. But to focus on what makes this a joint occupancy case, all that should be required in this context is some evidence of joint occupancy. And then it's the government burden to overcome that because the whole point of the joint occupancy construct is to avoid imposing criminal liability on somebody when there's a chance that somebody else left the item in the car or brought the item into the car. And certainly you have that here. The problem I have with the argument, maybe I'm just stupid in not recognizing this, is it's just so legalistic when it's such a common-sense type of thing. Was it his gun? Was he the one who was in charge of that gun that was in that backpack? And so people don't just leave a backpack with a gun, my backpack and gun in the car, and have someone drive off with it, with the kid in the back seat. That's not relevant? Oh, it's relevant, but does that provide sufficient evidence once we're in a joint occupancy context? I'm focusing first on the joint occupancy context, but you also need to look at whose gun it is. It's his mother's gun. There's nothing that connects him to the gun itself. There's no DNA evidence. There's no fingerprints. And when you talk about leaving something in a car that somebody else might therefore access, this is a mother and son. She would feel no reason to withdraw her personal items from the car, mainly because her son might later use it. There's not the risk of discovery that the government argues. Did the jury know that he was a convicted felon that couldn't own a gun? The government knew that. The jury knew that, yes. So he couldn't buy a gun. He couldn't buy a gun, correct. But his mother swore on the form, on the purchase form, that this was for her use. There's no reason to think that she's committing a criminal act by buying it for somebody else. She has just as much a right to own a gun as anybody else. And her leaving a backpack in a car... I could explain why the gun was in her name, even though it was his gun. There was a very good reason why the gun would be in her name, even though he's the one who uses the gun, and she lies about it. There's no evidence that he uses the gun. The evidence is she bought the gun. There's no reason to disbelieve that. That's not affirmative proof that it's his gun. We need something that connects him to the backpack if it's a shared space. And all we have is proximity. We don't have anything connecting him to anything other than the joint space. The government points to, for example, sweatshirts and beanies and things like that that were in the car. Leave aside the fact that they could just as easily belong to his mother, who on the firearms form indicates she's 5'5 and 220 pounds. So the fact that it's an adult sweatshirt, that it's large, yeah, it's not his daughter's who's in the car, a six-year-old daughter, but doesn't at all suggest that it's his versus hers. And the fact that there's stuff in the car at best connects him to the car, which his driving the car and his joint ownership of the car already does. It doesn't do anything to connect him to the backpack itself or to the gun within it. And that's what we need in a joint occupancy case is some nexus between him and not just the space generally, because there's always that in a joint occupancy case, but to the contraband. So the things we're talking about, I mean, his mother didn't testify, right? Correct. OK. So we don't know if she'd ever been in the car. Well, we know that she owned it. No, I know that. Hold on, hold on. You're changing the facts on me. There's no evidence that she was ever in the car. Other than her ownership? Yes. Yes. And your presumption that if you own something, you're going to use it. Well, then we should be working with the ordinary case and not the outlier case where somebody buys something and then doesn't use it. Right. Well, I mean, it wouldn't necessarily be an outlier, would it? I own a vehicle. My son drives the vehicle. My son basically prohibits me from driving the vehicle. And so it wouldn't be a little disingenuous for me to say it's not his car if he got in trouble. But those are different facts. Those are different facts, I get. But what we know is that there was no evidence that his mother ever drove the car. There was. No evidence because the government never presented any evidence. No, I understand. I understand. I'm just talking about what's there. Yes. No evidence that the mother ever drove the car. No evidence that the mother put the backpack in the car. No evidence that the mother put the gun in the car. I mean, we don't know precisely how this all occurred. And that's sort of your point, right? That is my point. And by the same token, we don't have any evidence that she bought the gun for him. We have evidence that she bought the gun. We have evidence that she swore that she was the purchaser and not buying it for somebody else. There's no reason to doubt that. It's the government's burden to prove its case, to take this case out of what is naturally a joint occupancy case and take it into the sole occupancy case where the only person who has control over that space is Mr. Curry and not his mother, who's the joint owner, and which her gun is found in a backpack. There's nothing in the backpack that identifies it to Mr. Curry. There's just nothing here that connects him to that backpack specifically. The government tries to make something out of this to reach to the side by claiming he was putting four items on top of a backpack in two seconds, which, frankly, is just... There's no way that could happen. There aren't the shoulder booms that would make it happen. And the government's argument is, well, this stuff was by the side of the seat. And if you look at the very picture in their brief as well as the video from which it comes, you can see that there's very little space there. It's implausible that that stuff was laying there. And in any event, it just couldn't physically happen. They also make the argument that he engaged in suspicious conduct in one way by saying, by moving towards the car when one of the officers started to search it. We didn't cite our brief. We did cite Defense Exhibit O, which is in supplemental record. If you look at that, at 104 to 121 of that videotape, you can see that this is at the very moment when his daughter is being removed from the car. And when they tell him, don't go near there, he stops. There's nothing at all suspicious in his behavior at any time. I encourage the court to look at the videos that we cited in the briefs. There's just nothing here that connects him to the gun or the backpack, his mother's gun, in a backpack where its outline couldn't be observed and there was no reason for him to know that there was a gun inside of it. We therefore ask the court to vacate his 922G conviction and remand with instruction to dismiss the indictment. Morning again, Your Honors, and may it please the court, Rajiv Mohan for the United States. This court should affirm, because it was not unreasonable for the jury to infer that the driver, sole adult occupant, and co-registered owner of a car he described as his own constructively possessed a firearm inside of a backpack located on the front passenger seat. And I'd like to start with this question of joint occupancy versus exclusive control, because I think these are not necessarily rigid categories. Ultimately, the meaning of constructive possession is the same in both categories, and what this court's cases reflect is that in a case of exclusive control, we can typically infer constructive possession based on that fact alone, but when we introduce a joint occupant, typically something more is necessary. And I think here, a reasonable jury could infer based on Mr. Curry's degree of control by itself that he constructively possessed the firearm inside, but however this court views the case, there was sufficient evidence. I want to highlight some of the facts that I think go most directly to the question of whether the backpack belonged to Mr. Curry or his mom. And I'd like to start with the items in the backpack itself. The marijuana, the cash, the scale, and of course the fully loaded firearm with a round in the chamber. And I think a jury could be reasonably skeptical of the notion that Mr. Curry's mom would leave behind a fully loaded firearm in a car she shared with her convicted felon's son, and which he used to transport his six-year-old daughter. Now I also want to emphasize one specific point about the marijuana. When Mr. Curry's mom purchased the firearm, she filled out ATF paperwork which was admitted at trial as defense exhibit S. And on that paperwork, she represented that she was not a user of any controlled substance, including marijuana. So I think the marijuana is a strong indication that the backpack did not belong to her and did belong to Mr. Curry. I also think the location of the backpack is important. I think a jury could reasonably conclude that a front passenger seat is a natural place for the driver to leave his or her personal belongings. And the fact that Mr. Curry felt comfortable putting other items on top of it supported an inference that he felt comfortable doing so because the backpack belonged to him. I also want to say a few words about the reach. Mr. Curry has a lot to say about what he could or could not have done within two seconds. I think that's ultimately beside the point. I think the reach by itself, regardless of what Mr. Curry was able to accomplish, supported a connection to the items on the front passenger seat. And I pointed this court's decision in United States v. Michelle, which is cited in our brief, which involved a similar reach and where the officer could not see how close the defendant got to the gun or even whether he was specifically reaching for it, and still the reach supported an inference of constructive possession. So for all of those reasons, we believe that the evidence was sufficient here. However, this court used the case because a reasonable jury could conclude that Mr. Curry had the power and intent to exercise control over the firearm, which is the ultimate question, whether joint occupancy or exclusive patrol, and we would therefore ask the court to affirm. You didn't point to what – maybe I'm misunderstanding the evidence, but when he was talking to his mother, he said, they stopped me in my car. Yes. I mean, it wasn't just that he said my car to the officers. He's saying it to the person who's the co-owner of the car. He didn't say our car or your car or something like that. That's right, Your Honor, and I think to the extent he later referred to the car, a jury could sort that out and take him at his word as he initially put it to his mom. Questions? Thank you. He's got about two minutes. Is that right? You have to talk fast. You don't have quite two minutes. It's 1.58.  Yeah. Judge Carson is talking about a car that his son used. My wife and I own a car together. She'll refer to it as her car. She'll refer to it that way to me. Because that's the one she – you drive it as much as she does. I drive the car a lot. But when you talk to her, well, I shouldn't ask what you say to your wife. She would say my car. She would talk to me. And it may reflect predominant use. It might. It doesn't change the fact that it's jointly occupied, jointly used, and that we both might leave things in there. And that's the fact that he put stuff on the backpack or anything of the kind where the backpack was in the front seat. If his mother left the backpack in the car, there's no reason to think he would be at all uncomfortable putting the Happy Meals that he had just had with his daughter on top. It doesn't show a connection to the backpack. It shows his comfort in putting something there. That's all it shows. Could a reasonable juror infer that someone, whether it be his mother or someone else who was presumably trafficking narcotics with a scale, marijuana in cash, and a gun, that they wouldn't just leave that in their car? Could a reasonable juror infer that? Well, first of all, there's no evidence of what that white powder was. Second of all, the marijuana was remnants. And the government, the money that it refers to, it was $100, about $100, what it referred to in summation as a little bit of money. So we don't know what the situation was with his mother. The notion is only Mr. Curry could have had a gun. Okay, so I'll take your factual recitation as the straight up on what it is. Could a reasonable juror infer that she wouldn't leave that in the car? Is it possible she wouldn't leave it in the car? Yes. No, I want to know if a reasonable juror could infer that. I don't think it tells us one way or the other. She might feel perfectly comfortable because it's her son who's going to be driving the car. Her son who she has no fear of discovery from. Or she may have simply forgotten it when she got out of the car. This is a car that's jointly owned and presumably jointly used. And that fact needs to inform this court's decision. And in fact, the government could have presented evidence that shows that it was unlikely that the mother used the car. But they didn't present anything like that. And Judge Carson, you were talking about your son who was living with you. If you look at the pre-sentence report, they were actually living together at the time. I just wanted to remind you you're over a minute. Oh, I am, yes. Thank you, Your Honor. Thank you. Case is submitted and counsel are excused. Thank you.